UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARIKO L.A. BENNETT and<br>STANLEY L. PENN, | ) <br> ) <br> ) | Consolidated<br>06 C 317 |
| Plaintiffs, | ) <br> ) | |
| v. | ) <br> ) | Consolidated with:<br>06 C 318 |
| SOUTHWEST AIRLINES CO., a Texas<br>corporation; THE BOEING COMPANY,<br>a Delaware corporation; and the CITY<br>OF CHICAGO, a municipal corporation, | ) <br> ) <br> ) <br> ) <br> ) | 06 C 319<br>06 C 330<br>06 C 331<br>06 C 332<br>06 C 2202 |
| Defendants. | ) | 06 C 2203 |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, Judge:

This matter comes before the court on Plaintiffs' motions that we certify our order of April 20, 2006, for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). For the reasons set forth below, the motion is granted.

## BACKGROUND

The complaints in this case arise out of the crash of Southwest Airlines ("Southwest") Flight 1248, a Boeing 737-700, on December 8, 2005, at Chicago's Midway International Airport ("Midway"). The plane allegedly overran a runway during landing, broke through the airport fence, and came to an eventual stop on

Central Avenue near 55th Street. These two streets run along the northern and western perimeter of the airport. Plaintiffs were passengers on the aircraft or bystanders on the streets adjoining the airport.

Plaintiffs filed lawsuits in Illinois state court for personal injuries arising from the accident. The complaints allege various causes of action including negligence, conscious disregard for safety, and product liability. Though the contents of the complaints vary somewhat, all take issue at least in part with the actions of the airline and the pilot in deciding when, where, and how to land the plane. For instance, the complaint in the first-filed case, <u>Bennett v. Southwest Airlines</u>, Case No. 06 C 317, contends that Flight 1248 was a scheduled passenger flight from Baltimore to Chicago conducted under 14 C.F.R. 121, the regulation that applies to U.S.-registered civil airplanes with seats for 20 or more passengers operated by an air carrier or commercial operator. 14 C.F.R. § 119.1. It alleges, inter alia, that the pilot began an approach that was unsafe because of the weather, visibility, and runway conditions at the time. It also contends that the pilot "failed to abandon the approach before it was too late" and operated the flight in violation of Federal Aviation Regulations ("FARs"), specifically FAR 91.13(a). Furthermore, it alleges that the pilot operated the aircraft during the approach and landing contrary to the requirements and instructions set forth in the flight manual approved by the Federal Aviation Administration. Finally, the complaint

theorizes that the pilot put concerns for on-time departure for the next flight for the plane above the proper concern for the safety of the passengers.

Defendants Southwest, the City of Chicago (who maintains the runways and the airport facilities), and Boeing removed the case to our court. Several cases have followed the same track as Bennett, and they have all been consolidated for our consideration. Plaintiffs have all moved for remand of the cases to state court. On April 20, we denied these motions, concluding that federal question jurisdiction exists in this case. Plaintiffs now ask that we certify the order to the Seventh Circuit for interlocutory review.

**LEGAL STANDARD**

To qualify as a candidate for interlocutory appeal under 28 U.S.C. §1292(b), the order in question must "involve[] a controlling question of law as to which there is substantial ground for difference of opinion." 28 U.S.C. § 1292(b). In addition, the district judge must believe that "an immediate appeal from the order may materially advance the ultimate termination of the litigation." Id. This formulation breaks down into four components, designed to ensure that § 1292(b) will be invoked only in exceptional cases, rather than where the parties simply disagree with a ruling of the trial judge and wish to have the ruling immediately examined. Ahrenholz v. Bd. of Trustees of Univ. of Ill., 219 F.3d 674, 676 (7th Cir. 2000). The first, the requirement

that the order involve a "question of law" refers to an abstract legal issue regarding the meaning of a statutory provision, a constitutional provision, a federal regulation, or a federal common-law doctrine. Id. This legal issue must also be controlling in that it is likely to affect the future course of the litigation. Sokaogon Gaming Enterprise Corp. v. Tushie-Montgomery Associates, Inc., 86 F.3d 656, 659 (7th Cir. 1996). The issue must be one on which there is a substantial ground for a difference of opinion, which has been construed to be "synonymous with a substantial likelihood that appellant's position would prevail on appeal." Seven-Up Co. v. O-So Grape Co., 179 F. Supp. 167, 172 (S. D. Ill. 1959). Finally, the intermediate review should have the potential to bring the case to its ultimate resolution in a much faster and more efficacious way than would be possible if the issue was not addressed until the trial proceedings resulted in a final judgment.

## DISCUSSION

**1. Question of Law**

In support of their motions for interlocutory appeal, Plaintiffs contend that there are no resolutions of factual issues necessary to determine the abstract legal question of whether federal question jurisdiction is present in this case. We agree. The well-pleaded complaint rule and the corollary doctrine of artful pleading provide the necessary framework within which we examined Plaintiffs' allegations. See Bastien

v. AT&T Wireless Servs. Inc., 205 F.3d 983, 986 (7th Cir. 2000); Burda v. M. Ecker Co., 954 F.2d 434, 438 (7th Cir. 1992). Deciding whether the situation Plaintiffs' allege is one in which an exercise of federal jurisdiction is appropriate will involve the text of the complaint, our written order of April 20, our in-court remarks on May 16, 28 U.S.C. § 1331, the preemptive scope of federal aviation statutes and regulations, and the line of case law examining embedded issue federal question jurisdiction. Consequently, the consideration of the proposed appeal will require only treatment of an abstract legal issue, so the first requirement of § 1292(b) is satisfied.

**2. That is Controlling**

There is no diversity between the parties in this case. If we are incorrect and there is no federal question jurisdiction, the case should return to state court for consideration. If we are correct in our assessment, the case will remain before us and proceed accordingly. Thus, the issue to be considered on appeal will certainly affect the course of the litigation, making the question of law one that is controlling for purposes of § 1292(b).

**3. Substantial Ground for Difference of Opinion**

As our April 20 order expressed and our in-court remarks on May 16 reiterated, we are of the opinion that federal question jurisdiction exists in this case either because of the federal issues embedded in and necessary to the Plaintiffs' state-law claims or

because federal statutes and regulations pertaining to takeoffs and landings of flights such as Flight 1248 preempt any concurrent state-law control of the same issues.

With respect to the first basis, there can be no doubt that the category of cases that will support the type of jurisdiction discussed in Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg. is narrow and the situations involved are unusual. — U.S. —, — 125 S. Ct. 2363, 2366-67 (2005). For the reasons articulated on the record, we are of the opinion that this case fits within the Grable construct, and the exercise of jurisdiction will not upset the apple cart of caseload allocation between the federal and state courts.[1] Plaintiffs present plausible arguments to the contrary and cite

---

[1] According to statistics from the National Transportation Safety Board, the number of cases of this type that could be filed is very small. Though plaintiffs are certainly correct that of the aircraft accidents that occur during flight, the largest numbers occur during take-off and landing, the overall numbers are so small that the balance of work between the federal and state courts would scarcely be affected even if every accident occurring during these two phases of flight were filed in federal court. For example, in 2001, a year in which more airline accidents occurred than took place in 2005, when this crash occurred, twelve accidents (out of 10,632,880 departures) occurred in aircraft with 10 or more seats used in scheduled passenger service during landing; eight occurred during take-off. See www.ntsb.gov/aviation/Table6.htm; http://www.ntsb.gov/publictn/2006/ARG0601.pdf at 6. Conceivably, several of these cases would have a basis for federal jurisdiction independent of embedded issue jurisdiction. If the parties are completely diverse, as often occurs in air crash cases, an exercise of jurisdiction arises under 28 U.S.C. § 1332. In other cases, the United States will be a defendant, vesting original jurisdiction in the federal district courts pursuant to 28 U.S.C. § 1346. If 75 people or more are killed as a result of the crash, 28 U.S.C. § 1369 rests original jurisdiction in the federal district courts for most cases. Thus, the number of cases that would fall into the small and special category we have identified is minuscule.

to other cases that have examined the effect of Grable in cases involving plane crashes that did not occur during a scheduled takeoff or landing. Glorvigen v. Cirrus Design Corp., 2006 WL 399419 (D. Minn. Feb. 16, 2006); Sarantino v. American Airlines, Inc., 2005 WL 2406024 (E.D. Mo. Sept. 29, 2005); Wandel v. American Airlines, Inc., 2005 WL 2406017 (E.D. Mo. Sept. 28, 2005).[2] These cases, though factually distinguishable in a crucial regard from the cases before us, and the significantly limited nature of this jurisdictional basis, are sufficient to establish a substantial ground for difference of opinion on the presence of embedded issue jurisdiction.

With regard to preemption, the strength of the federal interest and the importance of uniformity in treatment of particular aspects of aviation is beyond peradventure. On June 20 and 21, 2006, the National Transportation Safety Board convened a two-day hearing in Washington to examine the very incident that forms the basis of Plaintiffs' claims. In addition, cases from other circuits examining issues of federal preemption of tort claims arising from injuries occurring during flight have concluded that state claims are preempted by federal law in such cases. See, e.g., Witty v. Delta Air Lines, Inc., 366 F.3d 380, 384 (5th Cir. 2004); Abdullah v. American Airlines, Inc., 181 F.3d 363 (3rd Cir. 1999).[3]

---

[2] Though issued as two opinions in separate cases, Wandel and Sarantino both involve the same plane crash.

[3] In Witty, the parties were completely diverse, giving an independent basis for an exercise of federal jurisdiction. The jurisdictional basis involved in Abdullah is not stated in the opinion.

However, federal preemption generally constitutes a federal defense to a state law action, and therefore would not support removal from state court. Bastien, 205 F.3d at 986. In addition, Plaintiffs correctly point out that neither federal aviation statutes nor the corresponding regulations provide a private cause of action for injuries of the types Plaintiffs allege in their complaint. In addition, complete preemption of any case containing an aviation component is contrary to established precedent. See, e.g., Hoagland v. Town of Clear Lake, Indiana, 415 F.3d 693 (7th Cir. 2005) (finding no preemption of land use ordinance regarding location of heliport); Vorhees v. Naper Aero Club, 272 F.3d 398, 404 (7th Cir. 2001) (finding preemption can be used only as a defense to state law action regarding land use for property adjoining airport); Bieneman v. City of Chicago, 864 F.2d 463 (7th Cir. 1988) (finding no preemption of pollution regulations for land adjoining airport). Though none of these points is dispositive, they indicate that Plaintiffs' position could, in theory, prevail on appeal.

As the Supreme Court stated in City of Burbank v. Lockheed Air Terminal, Inc., for a preemption analysis involving aviation law, "each case turns on the peculiarities and special features of the federal regulatory scheme in question." 411 U.S. 624, 638, 93 S. Ct. 1854, 1862 (1973). As is clear even from the truncated presentation above, there is substantial ground for disagreement on the issue of whether federal law so completely preempts state-law claims emerging from a crash during a scheduled

take-off or landing that removal to federal court is permissible. Consequently, this aspect of § 1292(b) is also present in this case.

**4. Acceleration of the Ultimate Termination of the Litigation**

Because we are dealing with issues of jurisdiction, the ultimate termination of this litigation would be significantly stalled if we forged ahead now and only after all proceedings were complete were informed by the Court of Appeals that our effort was for naught because the case should have been in state court all along. A definitive pronouncement that we do or do not have jurisdiction over this cause of action at this point will accelerate the end of this case and ensure that the parties will not have to start from scratch years from now.

## CONCLUSION

Based on the foregoing analysis, we certify our orders of April 20 and May 15, 2006, for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

*Charles P. Kocoras*
Charles P. Kocoras
United States District Judge

Dated:     July 13, 2006